# EXHIBIT I



# SECURITY AND INDUCEMENT AGREEMENT

**FOR VALUE RECEIVED,** and to induce TAG Virgin Islands, Inc., as agent, with an address at The Tunick Building, 1336 Beltjen Road, Suite 202, St. Thomas, VI 00802 ("Secured Party"), to loan (the "Loan") to International Equine Acquisitions Holdings, Inc., a Delaware corporation with an address at 595 Stewart Avenue, 8th Floor, Garden City, New York 11530, ("Debtor"), $1,000,000, which Loan is evidenced by a 6% convertible, secured, subordinated promissory note dated as of March 21, 2007 issued by Debtor to Secured Party (the "Note"), a copy of which is appended hereto, Debtor hereby agrees that Secured Party shall have the rights, remedies and benefits hereinafter set forth.

## ARTICLE I
## DEFINITIONS

As used in this Agreement, the following terms shall have the following meanings:

(i) "Agreement" means this Agreement and all extensions, amendments and/or other modifications thereof.

(ii) "Collateral" means Debtor's 100% ownership interest in the two year old horse sired by Pulpit out of the dam Storm Cat (the "Two Year Old"), 15% ownership interest in the horse named Kip Deville, and 10% ownership interest in the horse named WonderLady Ann.

(iii) "Event of Default" means the occurrence or existence of any event or condition described in Section 5 of the Note.

(iv) "Financing Agreements" means this Agreement, all agreements and documents required to secure the Collateral, all current and future related agreements, documents and instruments, as now existing and as hereafter amended, modified or supplemented, and the Note.



(v) "Inducement Fee" means a 5% ownership interest in the horse named Kip Deville that Debtor is paying to Secured Party to induce secured Party to make the Loan.



(vi) "Note" means the secured promissory note in the principal amount of $1,000,000 dated as of the date hereof evidencing the Loan, issued by Debtor to Secured Party.

(vii) "Obligations" means the Obligations as defined in the Note and as provided herein.

(viii) "Uniform Commercial Code" means the Uniform Commercial Code of the jurisdiction to be determined by Secured Party.

All other terms defined in the preamble or the recitals hereto shall have the respective meanings ascribed to them therein. Unless the context otherwise indicates, all terms used

Security Agreement between
TAG Virgin Islands, Inc., as agent,
and International Equine Acquisitions Holdings, Inc.
dated as of March 21, 2007

without definition in this Agreement shall have the meanings ascribed to them in the Uniform Commercial Code as currently in effect, to the extent the same are used or defined therein.

## ARTICLE II
## SECURITY; DELIVERY OF COLLATERAL;
## PAYMENT OF INDUCEMENT AND CONSULTING FEES;

### 2.1 Designation of Security.

As security for the payment and performance of the Obligations, Debtor hereby grants to Secured Party a continuing security interest in and a general lien upon the Collateral. Debtor will execute such documents and take whatever additional actions may be required under applicable law to perfect Secured Party's security interest in the Collateral as provided herein.

### 2.2 Debtor's Agreement to pay the Inducement Fee.



Debtor acknowledges to and agrees with Secured Party that it is obligated to pay the Inducement Fee. Accordingly, Debtor herby agrees to transfer (the "Transfer") a 5% ownership interest in the horse named Kip Deville to Secured Party or its designee and covenants to Secured Party that it will execute all documents and take whatever additional action may be required to effect the Transfer.

## ARTICLE III
## REPRESENTATIONS, WARRANTIES,
## ACKNOWLEDGEMENTS AND COVENANTS OF DEBTOR

### 3.1 Incorporation of Representations, Warranties and Covenants.

All representations, warranties and covenants of Debtor set forth in the Note are hereby made a part hereof and incorporated by reference herein.

### 3.2 Representation, Warranties, Covenants and Acknowledgements of Debtor.

Debtor represents warrants, and acknowledges to Secured Party that: (i) it owns the Collateral, free and clear of all liens and encumbrances except for those held by Payee in accordance with the terms of the Note and this Agreement; (ii) the Collateral are all healthy and in racing condition and there is no pre-existing or other condition that would adversely affect the value of the Collateral; (iii) the Two Year Old is valued at no less than $500,000, Kip Deville is valued at no less than $10,000,000 and WonderLady Ann is valued at no less than $3,000,000 (collectively, the "Valuations"), (iv) it and/or one of its subsidiaries or affiliates complies with laws, rules and regulations permitting it to own and manage a veterinary facility (the "Veterinary Facility") in the State of New York and is licensed to own and race thoroughbred racehorses in the State of New York; (v) it has full

Security Agreement between
TAG Virgin Islands, Inc., as agent,
and International Equine Acquisitions Holdings, Inc.
dated as of March 21, 2007

power and authority to execute and deliver this Note, and that the execution and delivery of this Note will not result in the breach of or default under, with or without the giving of notice and/or the passage of time, any other agreement, financial instrument, arrangement or indenture to which it is a party or by which it may be bound, or the violation of any law, statute, rule, decree, judgment or regulation binding upon it; and (vi) it has taken and will take all acts required, including but not limited to authorizing the signatory hereof on its behalf to execute this Agreement, so that when duly executed and delivered by Debtor, this Agreement will constitute Debtor's legal, valid and binding obligation and be enforceable by Secured Party against Debtor in accordance with its terms. Debtor covenants to Payee that: (A) it will provide Payee with such documentation as Payee may reasonable request to support the Valuations; (B) it will commence managing the Veterinary Facility within nine months after the date hereof; and (C) until the Obligations are paid in full, it will keep the Collateral free and clear of all liens and encumbrances and will care for and maintain the health of the Collateral and maintain insurance policies insuring the Collateral against such risks as are customarily insured against for property of this type.

### 3.3  Further Assurances; Financing Statements.

Upon request of Secured Party, at any time and from time to time, Debtor will, at its own cost and expense, execute and deliver to Secured Party one or more financing statements pursuant to the Uniform Commercial Code, or amendments or continuations thereof, and any other documents required by Secured Party to further evidence, effect or perfect the security interest granted herein or to otherwise effectuate the purposes of this Agreement, and, to the extent permitted by applicable law, Debtor hereby authorizes Secured Party to execute and file at any time or times one or more financing statements pursuant to the Uniform Commercial Code with respect to any or all of the Collateral, signed only by Secured Party. Debtor hereby agrees that a carbon, photographic, electronic or other reproduction of this Agreement or of a financing statement shall be sufficient as a financing statement.

### 3.4  Collateral to be Held Free and Clear of Liens and Encumbrances.

During the term of this Agreement and until the Obligations are paid in full, the Collateral shall be held free and clear of all liens and encumbrances and Debtor shall not attempt to sell or otherwise transfer the Collateral and/or incur any liens and encumbrances thereon.

-3-

Security Agreement between
TAG Virgin Islands, Inc., as agent,
and International Equine Acquisitions Holdings, Inc.
dated as of March 21, 2007

### 3.5 Discharge of Liens.

Debtor shall immediately pay and cause the discharge of any liens, taxes or assessments, which may be levied upon the Collateral.

### 3.6 Actions by Secured Party.

Secured Party may, in its sole discretion and at any time, for the account and expense of Debtor, pay any amount or do any act required of Debtor hereunder or requested by Secured Party to preserve, protect, maintain or enforce the Obligations, the Collateral or security interest granted herein, and which Debtor fails to do or pay, including, without limitation, payment of any judgment against Debtor and any lien, claim or encumbrance upon or with respect to the Collateral, and any such payment shall be added to the Obligations and shall be payable by Debtor upon demand.

### 3.7 Adverse Changes.

Debtor shall promptly notify Secured Party in writing of any event that materially adversely affects the value of the Collateral.

## ARTICLE IV
## REMEDIES UPON EVENT OF DEFAULT

### 4.1 Acceleration of Obligations.

All of the Obligations shall, at the option of Secured Party and without notice, demand or legal process, become immediately due and payable upon (i) the occurrence of an Event of Default as set forth in Section 11 of the Note; (ii) Debtor's violation of any of the provisions of Article III above; or (iii) any representation or warranty made in this Agreement shall be untrue or incorrect in any material respect as of the date when made or deemed made.

### 4.2 Rights Under Uniform Commercial Code.

In addition to all of his other rights and remedies under this Agreement, the other Financing Agreements and any other agreement with Debtor, Secured Party shall have all of the rights and remedies of a secured party, including but not limited to the right to take possession of and/or sell or otherwise dispose of the Collateral, under the Uniform Commercial Code of the State of New York and of any state or other jurisdiction in which the Collateral is located from time to time.

-4-

Case 5:10-cv-00585-D   Document 1-10   Filed 12/23/10   Page 5 of 11

Security Agreement between
TAG Virgin Islands, Inc., as agent,
and International Equine Acquisitions Holdings, Inc.
dated as of March 21, 2007

**4.3  Action Pending Disposition.**

Until Secured Party is able to effect a sale or other disposition of the Collateral, it shall have the right to use or take such action with respect to the Collateral, or any part thereof, as it deems appropriate for the purpose of preserving the Collateral or its value or for any other purpose deemed appropriate by Secured Party. Secured Party shall have no obligation to Debtor to maintain or preserve the rights of Debtor as against third parties with respect to the Collateral while the Collateral is in the possession of Secured Party. Secured Party may, if it so elects, seek the appointment of a receiver or keeper to take possession of the Collateral and to enforce any of Secured Party's remedies with respect to such appointment without prior notice or hearing.

**4.4  Disposition of Collateral.**

4.41  Right to Sell or Otherwise Dispose of Collateral. Secured Party shall have the right to sell or otherwise dispose of all or any of the Collateral, at public or private sale or sales, with such notice as may be required by law, for cash or on credit, all as Secured Party, in its sole discretion, may deem advisable. Such sales may be adjourned and continued from time to time with or without notice. To enable Secured Party to effect any such sale, assignment and/or transfer, Debtor hereby makes, constitutes and appoints Secured Party as its true and lawful attorney, in its name, place and stead, and for its account and risk, to make, execute and deliver any and all assignments or other instruments that Secured Party may deem necessary or proper to effect the authority hereby conferred by signing its name only or by signing the same as its attorney-in-fact, as may be deemed by Secured Party to be necessary or proper in connection with any sale, assignment or transfer of all or any part of the Collateral. The foregoing power of attorney is coupled with an interest and shall be a continuing one and irrevocable so long as any portion of the Obligations remains unpaid in whole or in part.

4.42.  Right to Purchase Collateral. Secured Party may purchase all or any part of the Collateral at public sale or, if permitted by law, private sale, and in lieu of actual payment of such purchase price, may set off the amount of such price against the Obligations.

4.43  Application of Proceeds of Sale of Collateral. Except as otherwise provided by law, the proceeds realized from the sale of any of the Collateral shall be applied by Secured Party as follows:

> First, to the reasonable costs and expenses of every kind incurred in connection with or incidental to the care, safekeeping or otherwise of any and all of the Collateral or in any way relating to the rights of Secured Party hereunder, including reasonable attorney's fees and legal expenses;
>
> Second, to the satisfaction of the Obligations;
>
> Third, to the payment of any other amounts required by applicable law; and

Security Agreement between
TAG Virgin Islands, Inc., as agent,
and International Equine Acquisitions Holdings, Inc.
dated as of March 21, 2007

Fourth, to Debtor to the extent of the surplus proceeds, if any.

In the event that the proceeds realized from the sale as aforesaid are insufficient to pay all amounts to which Secured Party is legally entitled, Debtor will be liable for the deficiency, together with interest thereon, at the highest rate permitted by applicable law, and the reasonable fees of any attorneys employed by Secured Party to collect such deficiency.

### 4.5    Waiver of Bond.

In connection with the foregoing remedies, Debtor hereby waives the posting of any bond that might otherwise be required.

### 4.6    Remedies Cumulative.

All rights and remedies of Secured Party arising under this Agreement, the other Financing Agreements, any other agreement with Debtor or by operation of law shall be cumulative and non-exclusive, to the fullest extent permitted by law.

## ARTICLE V
## LIABILITY OF DEBTOR FOR
## SECURED PARTY'S EXPENSES AND ATTORNEYS' FEES

Debtor shall be liable to Secured Party for any and all sums, costs and expenses which Secured Party may pay or incur pursuant to the provisions of this Agreement or in defending, protecting and enforcing the security interest granted herein or in enforcing payment of the Obligations or otherwise in connection with the provisions hereof, including without limitation all search, filing and recording fees, appraisal fees, taxes, levies and reasonable attorneys' and accountants' fees and legal expenses, all fees and expenses for the service and filing of papers, fees of marshals, sheriffs, custodians, auctioneers and others, travel expenses, court costs and collection charges, all expenditures in connection with the repossession, holding, preparation for sale and sale of the Collateral, as well as all damages for breach of warranty, misrepresentation or breach of covenant by any of them, and all such liabilities shall be part of the Obligations and shall be payable upon demand.

Security Agreement between
TAG Virgin Islands, Inc., as agent,
and International Equine Acquisitions Holdings, Inc.
dated as of March 21, 2007

## ARTICLE VI
## MISCELLANEOUS

### 6.1 Articles and Section Titles.

The titles of articles and sections contained in this Agreement are merely for convenience and shall be without substantive meaning or content.

### 6.2 Counterparts.

This Agreement may be executed in any number of counterparts, each of which shall be considered and original but all of which shall constitute one and the same Agreement.

### 6.3 Governing Law; Consent to Jurisdiction; Venue Waiver; Waver of Jury Trial.

This Agreement shall be construed and enforced in accordance with, and the internal laws of the jurisdiction to be determined by Secured Party applicable to contracts made and to be performed entirely within such jurisdiction shall govern the rights of the parties. Debtor hereby waives all right to trial by jury in any action, suit or proceeding brought to enforce or defend any rights or remedies under this Agreement, and agrees that any lawsuit brought to enforce or interpret the provisions of this Agreement shall be instituted in state or federal courts, as appropriate, in the jurisdiction to be determined by Secured Party, and Debtor further agrees to submit to the personal jurisdiction of such court and waives any objection which it may have, based on improper venue, forum non conveniens or sufficiency of contact with the forum state, to the conduct of any proceeding in any such court and waives personal service of any and all process on it, and consents that all such service of process be made by mail or messenger directed to it at the address set forth in Section 6.5 below and that service so made shall be deemed to be completed upon the earlier of actual receipt or three days after the same shall have been posted to its address. Nothing contained in this paragraph affects the right of Secured Party to serve legal process in any other manner permitted by law or affects the right of Secured Party to bring any action or proceeding against Debtor or its property in the courts of any other jurisdiction.

### 6.4 Limitation of Interest Payments.

Nothing contained in this Agreement, the Note or in any other agreement between Debtor and Secured Party requires Debtor to pay or Secured Party to accept interest in an amount that would subject Secured Party to any penalty or forfeiture under applicable law. In no event shall the total of all charges payable hereunder, whether of interest or of such other charges that may or might be characterized as interest, exceed the lower of the maximum rate permitted to be charged under the laws of the States of New York, Delaware or the United States Virgin Islands or any other state or jurisdiction in which either Debtor or Secured Party resides, does business and/or the Collateral may be located. Should Secured

Security Agreement between
TAG Virgin Islands, Inc., as agent,
and International Equine Acquisitions Holdings, Inc.
dated as of March 21, 2007

Party receive any payment which is or would be in excess of that permitted to be charged under such laws, such payment shall have been and shall be deemed to have been made in error and shall automatically be applied to reduce the principal outstanding on the Note.

### 6.5 Notices.

6.51 Procedure for Notice. Any notice, demand, consent, approval, disapproval or statement (collectively, "Notices") required or permitted to be given by the terms and provisions of this Agreement, or by any law or governmental regulation, shall be in writing and, unless otherwise required by such law or regulation, shall be personally delivered or sent by United States mail, postage prepaid, as registered or certified mail or by nationally recognized overnight courier service. Any Notice to a party shall be addressed to such party at such party's address herein above set forth. By giving the other parties at least ten days' prior written notice, any party may, by Notice given as above provided, designate a different address or addresses for Notices.

6.52 When Notice Deemed Given. Any Notice shall be deemed given as of the date of delivery as indicated by affidavit in the case of personal delivery; in the case of mailing, any Notice shall be deemed given on the fifth day after mailing; in the case of delivery by nationally recognized overnight courier service, any Notice shall be deemed given on the next business day after dispatch.

### 6.6 Severability.

Wherever possible, each provision of this Agreement shall be interpreted in a manner so as to be effective and valid under applicable law. If any provision of this Agreement shall be held to be prohibited by or invalid under applicable law, such provision shall be ineffective only to the extent of such provision and the remaining provisions of this Agreement shall remain unaffected and in full force and effect.

### 6.7 Successors and Assigns.

This Agreement shall be binding upon and for the benefit of the parties hereto and their respective legal representatives, successors and assigns.

### 6.8 Amendment.

Only a written instrument signed by each of the parties hereto may amend this Agreement.

Security Agreement between
TAG Virgin Islands, Inc., as agent,
and International Equine Acquisitions Holdings, Inc.
dated as of March 21, 2007

**6.9** **Waivers.**

Any failure or delay by Secured Party to require strict performance by Debtor of any of the provisions, warranties, terms or conditions contained herein or in any of the other Financing Agreements shall not affect Secured Party's right to demand strict compliance therewith and performance thereof, and any waiver of any default shall not waive or affect any other default, whether prior or subsequent thereto, and whether of the same or of a different type. None of the warranties, conditions, provisions and terms contained herein or in any other agreement, document or instrument shall be deemed to have been waived by any act or knowledge of Secured Party, its agents, officers, stockholders or employees, but only by an instrument in writing, signed by TAG Virgin Islands, Inc., as agent for Secured Party and directed to Debtor, specifying such waiver.

(signature page to follow)

Security Agreement between
TAG Virgin Islands, Inc., as agent,
and International Equine Acquisitions Holdings, Inc.
dated as of March 21, 2007

**IN WITNESS WHEREOF**, the undersigned have executed this Agreement as of the 21st day of March, 2007.

International Equine Acquisitions Holdings, Inc.
Debtor

_____
Michael Iavarone
President and Chief Executive Officer

TAG Virgin Islands, Inc., as agent

_____
James Tagliaferri, President